## Commonwealth v. Braham

*Frank C. Roney, Jr., Assistant District Attorney*, for Commonwealth.

*Robert C. Brady, Jeffrey P. Derrico*, for defendant.

GLADDEN, *J.*, March 2, 1983—We have before us various pretrial motions, one of which is a motion to quash. We have heard testimony on this motion in open court and have considered the evidence of the Commonwealth. This is a case in which the Commonwealth has presented very explicit evidence that has resulted from a long period of professional investigation and diligent work by State Police officers from the Commonwealths of Virginia and Pennsylvania.

Defendant has been charged with the crime of Corrupt Organizations (18 Pa.C.S.A. §911) and with the crime of receiving stolen property (18 Pa.C.S.A. §3925). The motion to quash has been directed only at this information which deals with the

charge of corrupt organizations. The statute dealing with this crime has found little use in this Commonwealth since its enactment in 1973, and our research reveals no appellate cases interpreting this statute.[1] We recognize that this statute in many ways is similar to the federal law known as the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1961 et seq.) which has been an effective tool used by law enforcement officers in the ongoing war against organized crime.

The Pennsylvania statute sets forth in the body of the act itself findings of fact made by our General Assembly. Succinctly stated, these findings deplore the existence of organized crime; recognize its existence on a large scale within the Commonwealth; and acknowledge that a vast amount of money is used by organized crime to infiltrate and corrupt legitimate businesses operating within the

---

1. Two Delaware County, Pennsylvania, cases involving the Corrupt Organizations Act have been decided. In Commonwealth v. Taraschi, 70 Del. Cty. Rpts. 104 (1982), the court held that defendants need not be charged with the underlying "predicate acts" that make up the pattern of racketeering activity in order to be convinced under the Corrupt Organizations Statute. In Commonwealth v. Yacoubian, Del. Cty. Rpts. (No. 3330-81, May 26, 1982), the court adopted the United States Supreme Court's opinion in U.S. v. Turkette, 452 U.S. 576, 69 L. Ed. 2d 246 (1981) and held that the "enterprise" in which defendants are engaged need not be a "legitimate" enterprise, and may be illegitimate in order for the Corrupt Organizations Act to apply. See also Ehrenwirth, "The Effect of the New Pennsylvania Crimes Code on Organized Crime: Too Little But Not Too Late," 12 Duquesne Law Review 812 (1974), and Comment, "The Pennsylvania Attack on Racketeers in Legitimate Enterprises," 78 Dickinson Law Review 176 (1973), for an additional interpretation of 18 Pa.C.S.A. §911, Corrupt Organizations. It should be noted that in both of the Delaware County cases cited above, more than one "predicate act" occurred within the Commonwealth of Pennsylvania.

Commonwealth; and assert that the statute was enacted to successfully "resist and eliminate" this situation within the Commonwealth. The act then outlines the prohibited activities in Section (b). It says:

(1) It shall be unlawful for any person who has received any income derived, directly in indirectly, from a pattern of racketeering activity in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of assisting another to do so, shall not be unlawful under this subsection on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issue held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity after such purchase, do not amount in the aggregate to 1% of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer: Provided, further, That if, in any proceeding involving an alleged investment in violation of this subsection, it is established that over half of the defendant's aggregate income for a period of two or more years immediately preceding such investment was derived from apattern of racketeering activity, a rebuttable presumption shall arise that such investment included income derived from such pattern of racketeering activity.

(2) It shall be unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(4) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (1), (2) or (3) of this subsection.

In the instant case there is evidence presented by the Commonwealth that defendant attempted to sell to an undercover State Police officer a John Deere bulldozer and a Ford tandem truck for a total price of $8,500. This sale was to be consummated in Washington, Washington County, Pennsylvania, on September 12, 1982. There is evidence that these vehicles were stolen on September 11, 1982. As a result of this transaction, defendant and one Ralph Edward Starr were arrested and charged with receiving stolen property. Several weeks later, and based on this transaction, these same defendants were charged with the crime of corrupt organizations.[2] As noted above, the prohibited activities require that we find a "pattern of racketeering activity" and defendant's interest to some degree in an "enterprise." It is necessary that we consider each of these proscribed activities in arriving at our decision here.

The definition of racketeering activity is set forth in Section (h) and specifically says that any act indictable under Chapter 39 (relating to theft and related offenses) can be considered racketeering activity. This subsection also permits the consider-

---

2. Starr entered a plea to both corrupt organizations and receiving stolen property on February 9, 1983, and has returned to face prosecution in either Virginia or West Virginia.

ation of similar activity outside the jurisdiction of this Commonwealth. Receiving stolen property is an enumerated crime in Chapter 39 of the Crimes Code. Subsection (h)(4) defines "pattern of racketeering activity" and refers to it as a course of conduct requiring two or more acts of racketeering activity. In this case, it is clear that only on indictable act occurred within this Commonwealth. There is no evidence of a "pattern of racketeering activity" occurring within Pennsylvania. In our opinion, keeping in mind the General Assembly's findings of fact, and considering the statute in its entirety, we find that to prosecute a defendant successfully under this statute that a pattern of racketeering activity must be proven to have taken place within this Commonwealth. That has not been proven here.

The more difficult definition is that of "enterprise" under Section (h)(3) of the statute. Enterprise is defined as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce." In this case, there is no evidence that defendant was acting other than as an individual, although there is some testimony others were involved with him in the activity in Pennsylvania as well as West Virginia and Virginia. Nevertheless, we are unable to find from the evidence before us that an "enterprise" by any definition existed in this Commonwealth.

There is no suggestion that money derived from this criminal activity was used to infiltrate or corrupt legitimate businesses operating within Pennsylvania, or that any businesses within this Commonwealth were outlets for illegally obtained capital "so as to constitute a substantial danger to

the economic and general welfare of the Commonwealth of Pennsylvania."

The corrupt organizations statute was designed and enacted to protect the citizens and business community of this Commonwealth from the evils of organized crime and racketeering. The facts in the instant situation, however, do not come within our interpretation of this statute. We are dealing here with an isolated incident and not with an established pattern of racketeering activity in this Commonwealth. While it is recognized that defendant's pervasive criminal activity alleged to have occurred in Virginia and West Virginia could be introduced as evidence against this defendant at a trial in this Commonwealth, in our opinion, that evidence is only relevant after it has been established that a "pattern of racketeering activity" is established to have taken place in Pennsylvania. Further, whatever gain is derived from that activity must be shown to have been channeled into an enterprise, legitimate or otherwise, within this Commonwealth for the purpose of corrupting that enterprise and gaining a foothold for organized crime in Pennsylvania.[3]

It is our opinion that those who are involved in this investigation should consider prosecution under the federal statute. If the Commonwealth of Virginia and the state of West Virginia are concerned about organized crime and the protection of their citizens and the legitimate businesses operating within their boundaries, then their legislatures should be called upon to enact a law similar to that which Pennsylvania has enacted to protect our own.

---

3. We arrive at this decision having taken into account 18 Pa.C.S.A. §102, "Territorial Applicability."

## ORDER

And now, March 4, 1983, the motion to quash filed by defendant to the information charging the crime of corrupt organizations is granted, and the charges of corrupt organizations are dismissed. Costs on the County.